## Case No. 17,140.

### The WANDO.

[1 Lowell, 18;[1] 2 Int. Rev. Rec. 117; 27 Law Rep. 391.]

District Court, D. Massachusetts. Sept., 1865.

PRIZE—VIOLATION OF BLOCKADE—CAPTURED COIN —PROPERTY OF NEUTRAL MASTER.

1. Coin taken in a vessel which was captured in the act of breaking blockade, is liable to condemnation, though belonging to a neutral, and not intended to be used in trade.

2. Nor will such coin be exempted from this rule by being the property of the neutral master; at least, if his conduct as master and as a witness is open to just animadversion.

3. An amount of money sufficient for the master's necessary expenses, while detained here, will be allowed him out of such coin.

In admiralty.

R. H. Dana, Jr., Dist. Atty., for the United States and captors.

C. G. Thomas, for claimant.

LOWELL, District Judge. The Wando, or Let Her Rip, was captured near Wilmington, in North Carolina, having run out of that port, with a full cargo of cotton, in the course of an unfinished voyage from Nassau to Wilmington and back to Nassau. Her papers were all destroyed before the capture, and her national character does not distinctly appear by the evidence. The only claim is by the master, who is a British subject, for restitution of about five thousand dollars in American gold coin, which is alleged to be his private property. The master's own statements, made in his several affidavits, are not consistent with each other; but I am inclined to believe that the story told in his deposition, before he had taken counsel, or was likely to see the bearing of the facts upon the law of the case, is true,

namely, that the money was, in part, the earnings of this voyage, and in part savings out of former earnings. This is the most favorable view, at all events, which the evidence will allow me to take of his case. And the question is, how shall the court deal with this coin upon this state of facts?

It is conceded in the argument for the claimant that trade with Wilmington was illegal, and that any property engaged in that trade, or any thing which formed a necessary part or instrument of the mercantile adventure, must be condemned. But the allegation is, that this money was the mere personal and private property of the master, not used nor intended to be used in trade; and it is said that neutral property, so situated, is not liable to forfeiture.

In respect to the coin, which was a part of the wages for this unfinished illegal voyage, I think it must be considered not to come within the exception contended for. It is clear that the master could not claim his wages here, nor his freight; and if his outward freight had been paid at Wilmington, and were found on board in specie, it must have been condemned. And so, of these wages. They were so involved in the illegal transaction that they must, upon the admitted principle, follow the fate of the ship, cargo, and freight. A somewhat analogous point is decided in The Frederick, 5 C. Rob. Adm. 8.

But the exception contended for cannot be maintained. The right of a belligerent, who has established a lawful and effective blockade, is to prevent all intercourse with the blockaded port, and not merely the intercourse of traders. His object is to shut out all aid and comfort, and even all information, every thing which can by possibility be turned to the advantage of the enemy or to his own injury. The visit of a neutral immigrant vessel, or yacht, or mail carrier, or ship of war, or merchant vessel, are all equally illegal, unless with the consent of the blockading power, and may be restrained by him with such a degree of force, be it more or less, as may be necessary under the circumstances. And the violation of this right subjects private property in general to forfeiture. In the case of a neutral public ship indeed, the right of capture may not exist, but this is because for wrongs done by public officers of a friendly government, redress is sought directly of the government itself, which is presumed not to have authorized such acts. Governments do not proceed against each other in rem excepting when they are at war, or when redress has been refused them. But this is a question of remedy and of international comity, and does not at all depend upon the fact that the public ship is not a trading vessel.

It is equally true that the persons of neutrals are subject only to such restraint as may be necessary to prevent the illegal act, or to compel the presence in the prize courts of important witnesses. But this exemption applies alike to traders and to non-traders, and so throws no light on the present question. And

---

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

I think the principle is that private property which may aid the enemy is presumed to be hostile, and this for several reasons: one is, because of the very great difficulty attending the proof of intent in matters of this kind, and the great opportunity for fraud and deception; and again, because the intent of the owner may not control the action of the enemy. Thus, if contraband of war be taken into the blockaded or besieged port, who shall say that it will not be at once confiscated and turned to warlike use by the besieged? So of a vessel in ballast; and so of coin.

In this case, moreover, the evidence of intent is entirely insufficient. It is not easy to believe that the master would not have used the money in trade if he had found a good opportunity to do so: as indeed he did'use a part of his money to buy cotton, which was on board, and for which he makes no claim.

And it makes no difference that the money was actually on its way out from Wilmington when captured. It is equally liable to forfeiture for having been carried in, the voyage not being finished. And the mere bringing out of property through the blockade would, no doubt, subject it to a like forfeiture. See The Rapid, 8 Cranch [12 U. S.] 155.

I am not to be understood as deciding that the mere personal effects or the pocket-money, intended for the subsistence or expenses of the owner, whether he be an enemy or a neutral, is to be seized. Such is not the law nor the usage. In this case the marshal gave the claimant, with the consent of the captors, about two hundred dollars out of the sum taken, for his expenses. And, as he was detained here for a considerable time, I shall allow him two hundred dollars more. The rule I am intending to lay down is, that money as well as other property, in amount sufficiently large to be considered by the court, especially if capable of being used in trade if occasion occur, and taken breaking blockade, is to be deemed hostile, without regard to the neutrality of its owner, or to his actual intent to employ it in trade. It is for him to bring himself within any of the admitted exceptions, such as a license, &c.

Although the case was not put on that ground, I am aware that courts of prize exercise great lenity towards masters and seamen; and that the private adventure of the master has been restored in many cases in which the vessel and cargo have been condemned. But without examining the limits which ought to divide the discretion of the courts from the indulgence of the captors,—limits which I am inclined to think have been sometimes overstepped by the former,—it is enough to say that in this case the conduct of the master, by the false statements which he made to the marshal about this matter, by his prevarication in his affidavits, but especially by the spoliation of the ship's papers, are such, that he cannot fairly expect the exercise of the peculiar consideration in question. Decree of condemnation.